IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALLIE E. CLAYTON,<br>        Plaintiff, | CIVIL ACTION |
| v. | |
| UNITED STATES OF AMERICA,<br>        Defendant. | NO.  15-1340 |

## MEMORANDUM OPINION

In this personal injury case, Plaintiff Sallie E. Clayton asserts a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, against Defendant the United States of America arising from injuries Plaintiff sustained when she slipped on a wet floor sign at a United States Post Office.  Plaintiff alleges that the sign was negligently placed, breaching a duty of care under Pennsylvania law, and that this negligence was a proximate cause of injuries to her knee and leg.  Defendant has filed a motion for summary judgment.  For the reasons described below, Defendant's motion shall be granted.

I.      FACTUAL BACKGROUND

The incident giving rise to Plaintiff's claim occurred on January 6, 2014, at the Schuylkill Post Office at 2900 Grays Ferry Avenue in southwest Philadelphia (the "Post Office").  J.A. 8. That morning, postal custodian Daryl Hammock ("Hammock") placed one or more wet floor signs in the lobby of the Post Office near the front door to warn customers of potential snow melt tracked into the building from the parking lot.  J.A. 92.  The lobby is a narrow rectangular open space with writing tables along one side and a service counter at the end opposite the front door. J.A. 165, 169.  The front door is transparent glass, which allows customers to see most of the lobby prior to opening the door.  J.A. 8, 41.  The panel next to the door is transparent glass in the upper portion, but opaque in the lower portion.  J.A. 41, 165.  This opaque panel obscures the

view from outside of a portion of the lobby floor to the immediate right-hand side of the entrance.  J.A. 165.  The wet floor signs Hammock placed near the front door were bright yellow, and were emblazed with the message "CAUTION WET FLOOR" and the image of a person slipping.  J.A. 41.  Each sign folded out to make a 25-inch high, two-sided tent-style warning marker, designed and marketed specifically to be "stationary and visible from all directions."  J.A. 1.  When flattened, the signs measure 26 inches long and 13 inches wide.  J.A. 2.  Plaintiff testified that such signs are common and that she has seen them throughout Philadelphia "all the time."  J.A. 18.

At approximately 3:00 p.m., Plaintiff arrived at the Post Office, planning to complete a change-of-address form.  J.A. 7-8.  As she approached the Post Office, Plaintiff could see through the front door and noticed "people lined up" waiting for service at the far side of the lobby.  J.A. 9.  Plaintiff does not recall seeing the wet floor signs as she approached the building.  J.A. 9.  After opening the door, Plaintiff entered the lobby while looking forward at the line of customers.  J.A. 9.  After two or three steps inside the building, she fell to the ground, landing on her back.  J.A. 9-10.  Plaintiff testified that she "thinks" she was walking directly forward into the Post Office when she fell.  J.A. 9.  As she fell to the ground, Plaintiff heard a "slipping" or "scraping" noise.  J.A. 11.  After landing on her back, Plaintiff noticed—for the first time—a wet floor sign flat on the ground next to her.  J.A. 11.  The parties also dispute whether the sign was visible through the door from outside the Post Office.  Pl.'s Statement of Disputed Facts ¶ 21.

The parties agree that the wet floor sign caused Plaintiff to fall, but do not agree on the position of the sign prior to Plaintiff's fall.  J.A. 9; Def.'s Statement of Undisputed Facts ¶ 26.  Hammock and Post Office Clerk Syeatta Penson both testified at deposition that the sign was upright when Plaintiff entered the Post Office.  J.A. 96, 102.  Plaintiff believes that the sign was

flat on the floor prior to her fall based on the sound she recalls hearing as she fell, although she did not see the sign prior falling. J.A. 11.

The parties have stipulated that the location and circumstances of the fall were captured on the Post Office's video surveillance system. J.A. 219. The surveillance system has sufficient storage to retain video images for approximately 49 days before automatic overwriting. J.A. 219. Defendant received a letter requesting surveillance footage on January 31, 2014, well within the 49-day window after the incident. J.A. 219. When a Post Office employee sought to retrieve a copy of the video on June 5, 2014, the recording had been overwritten, and it was never produced to Plaintiff. J.A. 220.

## II.     LEGAL STANDARD

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). A fact is material if it might affect the outcome of the suit under the governing law. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "The reviewing court should view the

facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).  However, to prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Anderson*, 477 U.S. at 252) (alteration in *Jakimas*).  In other words, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26).

### III.   DISCUSSION

Plaintiff brings her claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  The FTCA provides the exclusive cause of action to recover damages in tort from the United States, *id.* §§ 1346(b)(1), 2679(b)(1), and provides that the United States shall be liable in tort "in the same manner and to the same extent as a private individual under like circumstances."  *Id.* § 2674.  Under the FTCA, liability is determined "'in accordance with the law of the place where the act or omission occurred.'"  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (citing 28 U.S.C. § 1346(b)(1)).

The acts alleged by Plaintiff occurred in Pennsylvania.  Under Pennsylvania law, a claim for negligence includes four elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to

the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005); *see also Morena v. S. Hills Health Sys.*, 462 A.2d 680, 684 n.5 (Pa. 1983) (same).

With respect to the duty owed to business invitees, Pennsylvania has adopted the Restatement (Second) formulation of negligence, which imposes liability only if the possessor:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343). The Restatement further clarifies that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (quoting Restatement (Second) of Torts § 343A). Accordingly, "the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee." *Mike v. Lebanon Miridites League*, 218 A.2d 814, 815 (Pa. 1966); *see also Carrender*, 469 A.2d at 123 (same). Even before these principles were synthesized in the Restatement, the Pennsylvania Supreme Court had already noted that "[i]f there is anything settled in the law of negligence in Pennsylvania, it is the duty of a person to look where he is walking and see that which is obvious." *Lewis v. Duquesne Inclined Plane Co.*, 28 A.2d 925, 926 (Pa. 1942).

A danger is obvious when "'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Carrender*, 469 A.2d at 123-24 (quoting Restatement (Second)

5

§ 343A cmt. b). Although obviousness is generally a factual inquiry, the question may be decided by a court as a matter of law when "reasonable minds could not differ as to the conclusion." *Carrender*, 469 A.2d at 124 (granting defendant judgment notwithstanding the verdict because an isolated patch of ice "was obvious to a reasonably attentive invitee" and could have been avoided); *see Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 105 (Pa. 1980) (judgment n.o.v. for defendant proper where danger of missing step in a house scheduled for demolition was obvious to invitee).

      Here, Plaintiff bases her negligence claim on Defendant's placement of a bright yellow wet floor sign in the lobby of the Post Office. Defendant's primary argument in favor of summary judgment is that the sign was obvious, and therefore cannot provide the basis for negligence liability under Pennsylvania law. Plaintiff argues that disagreements between the parties concerning the location and position of the sign create disputed issues of material fact concerning the obviousness of the sign, and thus preclude summary judgment. Specifically, Plaintiff argues that the sign would not have been obvious if, as she alleges, it was placed in the area obstructed from view from the outside by an opaque panel and was lying flat on the floor when she entered the Post Office. However, Plaintiff's argument is unavailing. Even under Plaintiff's version of the disputed facts, the sign would have been visible to any visitor once he or she stepped inside the open rectangular lobby of the Post Office. The sign was over two feet tall (or long, if lying flat on the floor), one foot wide, and colored bright yellow—in stark contrast to the dark floor mats covering the floor where Plaintiff fell. The size, shape, and color of the sign would render it obvious to a reasonable person exercising normal perception and judgment as they stepped inside the Post Office. This type of obvious condition does not impose a duty to protect invitees under Pennsylvania law.

Plaintiff argues that Defendant committed spoliation by allowing the video surveillance of the incident to be overwritten despite a timely request that it be preserved, and seeks an adverse inference as a result of the alleged spoliation.  However, while Defendant's failure to preserve and produce footage after receiving a timely preservation letter is troubling, there is no adverse inference which can be drawn from the footage's absence that would prevent summary judgment.  As described above, the sign was obvious by virtue of its size, color, and shape regardless of precisely where it was located in the lobby, if it was flat on the floor, if it had been flat on the floor for an extended period of time, or whether Plaintiff could see it prior to entering the Post Office.  Since nothing contained in the unproduced video footage could change the size, shape, and color that made the sign obvious, any adverse inferences concerning sign placement or position would not change the material facts that foreclose Defendant's liability, and thus cannot prevent summary judgment.  Accordingly, Defendant's motion for summary judgment must be granted.[1]

Dated: January 27, 2016

                                          **BY THE COURT:**

                                          **/S/WENDY BEETLESTONE, J.**
                                          _____
                                          **WENDY BEETLESTONE, J.**

---

[1] Defendant also presented an argument in favor of summary judgment based on contributory negligence.  Since Plaintiff has failed put forth evidence that would support a finding of negligence on the part of Defendant, it is not necessary to consider Defendant's contributory negligence argument.